NORTH SHORE SANITARY DISTRICT, Petitioner, *v.* THE POLLUTION CONTROL
BOARD *et al.*, Respondents.

(No. 72-70;

Second District—September 12, 1974.

Murray R. Conzelman, of Waukegan, for petitioner.

William J. Scott, Attorney General, of Chicago (Richard W. Cosby,
Assistant Attorney General, and Richard P. Glovka, of counsel), for re-
spondents.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This is a statutory review of an order entered February 17, 1972, by the
Illinois Pollution Control Board ("Board") (Ill. Rev. Stat. 1971, ch. 111½,
par. 1041). That order was entered in an action upon a complaint
by Richard Glovka (in which the Environmental Protection Agency
("Agency") intervened as additional complainant) against the North
Shore Sanitary District ("District") and other respondents, including
Thomas P. Kaeding and Alfred N. Bederman, whose separate appeals
from that order are upon review by this court on the same record
and exhibits (*Kaeding v. Pollution Control Bd.* (1974), 22 Ill.App.3d

36, 316 N.E.2d 788, and *Bederman v. Pollution Control Bd.* (1974), 22 Ill.App.3d 31, 316 N.E.2d 785).

The complaint alleged authorization by the District and use of sewer-connection permits for certain properties in the Village of Lake Bluff ("Lake Bluff") in violation of an order entered by the Board on March 31, 1971 ("sewer-ban order"), in a proceeding against the District by the League of Women Voters, in which the Agency was allowed to join. The sewer-ban order banned further sewer connections and extensions to the District's facilities until such time as treatment plants could adequately treat additional effluent. See *Seegren v. Environmental Protection Agency* (1972), 8 Ill.App.3d 1049, 1051.

Insofar as material in the instant case, the Board's order of February 17, 1972, assessed a penalty of $5,000 against the District and ordered it to revoke all authorizations for sewer connections to Lake Bluff's sewer facilities and to cause disconnection of any sewer connections made pursuant to the District's authorization including those involved in the cases of. *Kaeding* and *Bederman* above referred to.

The District contends that the Board's sewer-ban order was void to the extent that the Board, in its order of February 17, 1972, has construed the sewer-ban order as having revoked pre-existing permits granted by the State to install and operate certain sewers, in the absence of notice to the permit holders, and without a hearing in the proceedings resulting in the sewer-ban order. The District points to the fact that Richard J. Kissel, the Board member who was the hearing officer at the hearings and drafted the sewer-ban order, expressed the opinion on June 15, 1971 (less than 3 months later), to the District's general manager that if a permit had been issued prior to March 31, 1971, by the State to build and operate a sewer, "the person served by that sewer had a right to connect to it even after March 31." [1]

It is undisputed—that in a few instances shortly following the entry of the sewer-ban order the District's representatives interpreted it as preventing sewer connections to the District's facilities. On April 12, 1971, the District's general manager construed it as not being applicable to a new high school building in Lake Forest then under construction because the high school had a pre-existing sewer permit. On June 15, 1971, the District's attorney was told by Richard J. Kissel, a member of the Board who had written the sewer-ban order, that it did not apply to pre-existing

---

[1] Another question raised by this appeal was whether the Board's authority to impose monetary penalties under the Environmental Protection Act was an unconstitutional delegation of judicial power. This was decided by the Illinois Supreme Court in *City of Waukegan v. Pollution Control Bd.* (1974), 57 Ill.2d 170. Our holding in the instant case makes it unnecessary for us to reach that question.

permits and that "persons served by that sewer have a right to connect to it even after March 31." In addition to ordering the District to cease and desist authorization of sewer connections, to revoke all authorizations theretofore issued and to cause disconnection of sewer connections made pursuant to the District's authorization, the Board assessed a penalty in the sum of $5,000 against the District for violation of the sewer ban.[2]

The Board expressed the opinion in its order of February 17, 1972, that the sewer ban of March 31, 1971, "prohibited sewer connections irrespective of any pre-existing permits granted by the State or the District itself." The Board takes the same position in this court, and argues that the District, having failed to appeal the sewer-ban order, is precluded in effect from interpreting the sewer ban as it did. The District is not challenging the validity of the sewer-ban order. Indeed, neither the Board nor the District instituted this proceeding. It was filed by an individual (Mr. Glovka) who challenged the interpretation that the Board gave the sewer-ban order through its own member, Mr. Kissel, who wrote it.

Section 49(d) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1049(d)) provides as follows:

"All orders entered, permits or certifications granted * * * by the Air Pollution Control Board, the Sanitary Water Board, or the Department of Public Health relating to subjects embraced within this Act shall remain in full force and effect until superseded by actions taken under this Act."

The Board took no action under that provision to revoke or rescind pre-existing permits. The sewer ban made no reference to them. None of the holders of such permits were joined as parties to that proceeding or given any notice that their permits were intended to be revoked or rescinded thereby. In all instances in which the District authorized sewer connections the applicant or his predecessor in title had a pre-existing permit issued by the appropriate department of the State.

Due process of law by an administrative agency requires adequate notice and a fair hearing and both administrative and judicial proceedings "are governed by the fundamental principles and requirements of due process of law." *Lake County Contractors Ass'n v. Pollution Control Bd.* (1972), 6 Ill.App.3d 762, 765; *Quinn v. Department of Registration & Education* (1971), 132 Ill.App.2d 925, 926; see also *Bell v. Burson* (1971), 402 U.S. 535, 539, 29 L.Ed.2d 90, 91 S.Ct. 1586.

Inasmuch as the pre-existing permits held by various parties were

---

[2] It also ordered Bederman and Kaeding to cease and desist any sewer connections and to disconnect any connection theretofore made. See *Bederman v. Pollution Control Bd., supra,* and *Kaeding v. Pollution Control Bd., supra.*

not revoked or rescinded by notice or joinder as parties of such holders the District was not in violation of the Board's sewer-ban order. Therefore, no penalty could be imposed upon the District by the Board for authorizing sewer connections to holders of pre-existing permits, and the Board, as to such holders, could not prohibit sewer connections for them or cause the District to require disconnections of sewer connections already made.[3]

Therefore, the order entered by the Board on February 17, 1972, against the District is reversed.

Order reversed.

T. MORAN, P. J., and GUILD, J., concur.

---

[3] While not material in our holding it should be noted that only three homes were connected to the sewer, none of them are occupied, and there is no additional effluent resulting.