ANDOMARO HERNANDEZ, Plaintiff-Appellant, *v.* BOARD OF REVIEW, DEPARTMENT OF LABOR, *et al.*, Defendants-Appellees.

First District (4th Division)    No. 79-444

Opinion filed December 13, 1979.

Alan A. Alop and Debra Raskin, both of Legal Assistance Foundation, of Chicago, for appellant.

William J. Scott, Attorney General, and Paul Cherner, both of Chicago (Myra Turner, Assistant Attorney General, and Friedman & Koven, of counsel), for appellees.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County dismissing the plaintiff Andomaro Hernandez's complaint for administrative review and affirming the decision of the board of review of the division of Unemployment Insurance of the Illinois Department of Labor (the Department). The Department had dismissed the plaintiff's appeal of an adjudicator's decision to deny him unemployment benefits on the ground that the appeal was filed after the statutory appeal time limitation had run. On appeal, the plaintiff contends: (1) that the statutory appeal time limitation does not apply as he did not receive actual notice of the adjudicator's decision until after the statutory appeal time limitation had run; and (2) that because defendants knew that plaintiff does not read or understand English their failure to provide notice in Spanish denied plaintiff due process in violation of the United States and Illinois constitutions.

The plaintiff was employed for 1½ years as a painter by defendant Lab-Line Instruments, Inc. On September 12, 1977, the plaintiff was discharged from work and approximately one week later he filed a claim for unemployment insurance benefits. He was interviewed by a claims adjudicator at the local office of the division of unemployment insurance of the Illinois Department of Labor. During this interview he was provided with a Spanish language translator. Neither the defendant nor any member of his household can speak, read or understand English.

On October 21, 1977, the claims adjudicator found that Mr. Hernandez was ineligible for unemployment benefits on the ground that his discharge had been for work related misconduct. On that date the Department mailed to Mr. Hernandez a letter notifying him of the claims adjudicator's decision and of his appeal rights. The address was correct and the notice was timely received. The entire document was written in English.

Upon receipt of the letter Mr. Hernandez immediately brought it to a friend for translation. The friend translated only the reason for the plaintiff's discharge from work. He did not tell the plaintiff that the letter was a decision regarding his unemployment benefits nor did he translate the appeal provision. Concerned because he had not received his certification for benefits, the plaintiff returned to the local unemployment insurance office on November 3, 1977. A Spanish-speaking employee at the office explained to the plaintiff that he had been denied unemployment benefits. On that same day, 12 days after the adjudicator's decision had been mailed to him, the plaintiff filed an appeal of the adjudicator's determination.

A Department referee heard plaintiff's appeal on January 26, 1978. The plaintiff testified on his own behalf. He was assisted by an interpreter and represented by counsel. The referee dismissed the appeal on the ground that it had not been filed within the nine-day period required by statute. The plaintiff then appealed the referee's decision to the board of review, which affirmed the referee's decision. The board's decision was appealed to the circuit court of Cook County. The court dismissed the plaintiff's complaint on the motion of the Illinois Department of Labor, and affirmed the decision of the board of review.

The Unemployment Insurance Act (Ill. Rev. Stat. 1977, ch. 48, par. 300 *et seq.*; hereinafter "the Act") provides that generally a claim shall be heard first by a "claims adjudicator" (Ill. Rev. Stat. 1977, ch. 48, pars. 451 through 453) with an appeal to a referee (Ill. Rev. Stat. 1977, ch. 48, pars. 470 through 471) and an appeal from the referee's decision to a board of review (Ill. Rev. Stat. 1977, ch. 48, par. 473). Review under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, pars. 264 through 279) is available to the claimant from a final determination by the administrative agency. Ill. Rev. Stat. 1977, ch. 48, par. 520.

A claimant is entitled to written notice of the claims adjudicator's decision regarding his eligibility to receive benefits. (Ill. Rev. Stat. 1977, ch. 48, par. 452.) Unless the claimant files an appeal of this decision within nine days of its being mailed to him, such decision "shall be final as to all persons given notice thereof." Ill. Rev. Stat. 1977, ch. 48, par. 470.

The time limitation set forth in the Act has been held mandatory and thus jurisdictional. (*Huggins v. Board of Review* (1973), 10 Ill. App. 3d 140, 294 N.E.2d 32.) However, the finality of the adjudicator's decision and the appeal time limitations apply only as to "those parties given *actual* notice of the *administrative decision.*" (Emphasis added.) *Gutierrez v. Board of Review* (1975), 35 Ill. App. 3d 186, 190, 341 N.E.2d 115, 118.

The defendants contend that the letter of notice received by Hernandez constituted actual notice as contemplated by the Act notwithstanding that Mr. Hernandez read only Spanish while the notice was written entirely in English. The defendants make no attempt to distinguish *Flores v. Board of Review* (1979), 74 Ill. App. 3d 667, 393 N.E.2d 638, which rejected this argument. We find no basis on which to distinguish *Flores* and are in agreement with the holding therein.

The plaintiff in *Flores* could neither speak nor read English. Upon receiving a letter of notice of an adverse decision by a Department referee, she brought it to a friend for translation. The friend read the letter to herself and then interpreted it for the plaintiff, omitting any reference to the referee's decision. It was not until several weeks after the appeal time limitation had run that plaintiff learned of the referee's decision and

filed her appeal. Relying on *Gutierrez* the court held that the plaintiff did not have the actual notice of the decision contemplated by the Act and as such that the plaintiff was not precluded from appealing.

The facts in the instant case are, if anything, more compelling. The Department knew that the plaintiff spoke only Spanish but nonetheless sent the required notice of the adjudicator's decision in English. Despite the plaintiff's good-faith effort to obtain a translation of the letter he received, he did not receive a translation of those portions relating to the referee's decision and did not know that the letter was from the unemployment office. This is not a case where plaintiff seeks to appeal an adverse ruling years, months or even weeks after the statutory period has run. Rather, the plaintiff filed his appeal only three days after the statutory period. The administrative problems that defendants argue would attend long delayed appeals were avoided by plaintiff's exercise of due diligence in reporting to the unemployment office to check on the status of his claim two weeks after his interview with the claims adjudicator. Based upon these factors, upon the decision cited above, and the policies set forth below, we hold that plaintiff's appeal is not precluded.

Defendants further contend that under *Gutierrez* notice is actual when a person is conscious of having the means of knowing of the existence of the particular fact in question. They argue that the plaintiff knew the letter was from the unemployment office, knew that he could take the letter to the local unemployment office for a translation, and that therefore, he was conscious of having the means of knowing the adjudicator's decision.

However, there is nothing whatever in the record to indicate that the plaintiff did know the letter was from the unemployment insurance office. Contrary to what the company defendant argues, the record does not disclose that the plaintiff's friend made any reference to the fact that the letter concerned his unemployment benefits.

Further, the holding in *Gutierrez* is not applicable to our case and the rationale is inapposite to the defendants' position. The court held that the Spanish-speaking plaintiff received actual notice where he obtained a translation of the portion of the notice relating the adjudicator's decision even though the appeal rights provision was not translated. It wrote:

> "[W]e believe that if the portion of the notice relating to [the adjudicator's decision] had not been translated to plaintiff, a question might have been raised as to whether he received actual notice thereof as required by [the Act]. * * * [I]t would appear that persons known to be unfamiliar with the English language should be notified of the Department's finding or determination in a language that they understand." *Gutierrez*, 35 Ill. App. 3d 186, 191, 341 N.E.2d 115, 119.

The defendants' last contention is that a decision here that the plaintiff has not received actual notice would result in a requirement that other kinds of notice be given in the language of the person who is being notified. For example, it is argued that any service made by a sheriff would have to be in the language of the person served, that courts and agencies would be compelled to print certain opinions in Spanish, and that notices in Polish and Chinese would sometimes be required.

We do not agree. Our ruling is based upon the Unemployment Insurance Act and upon the cases and policies thereunder. The Unemployment Insurance Act is to be "liberally construed to the end that the benefits intended under the provisions of the act are received by employees." (*Grant Contracting Co. v. Murphy* (1944), 387 Ill. 137, 143, 56 N.E.2d 313, 316; *Central Foundry Division of General Motors Corp. v. Holland* (1976), 36 Ill. App. 3d 998, 345 N.E.2d 143.) The "policy and moving purpose [of the Act is] to alleviate the evils flowing from widespread unemployment and to provide benefits to those workers coming within the act as at least a partial reimbursement for loss of income during the period of unemployment." (*Crouch v. Murphy* (1945), 390 Ill. 112, 115, 60 N.E.2d 879, 881.) The express legislative purpose of the Act is articulated in its introductory section which provides in part:

> "Economic insecurity due to involuntary unemployment has become a serious menace to the health, safety, morals and welfare of the people of the State of Illinois. Involuntary unemployment is, therefore, a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family." (Ill. Rev. Stat. 1977, ch. 48, par. 300.)

A liberal construction of the notice provision of the Act therefore comports with the legislature's intent to protect individuals unemployed through no fault of their own.

Because actual notice is a prerequisite to the applicability of the appeal time limitation of the Act, and because the plaintiff did not receive such actual notice, his appeal is not precluded.

Due to our disposition in this matter, it is not necessary for us to reach the due process issue raised by the plaintiff. For the foregoing reasons, we reverse the judgment of the circuit court and remand this cause with directions to the circuit court to reverse the findings of the Board of Review and to direct the referee to hold a new hearing on the issue of the plaintiff's eligibility for unemployment benefits.

Reversed and remanded with directions.

LINN and ROMITI, JJ., concur.